IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–02045–KMT–KLM

SANDRA MURRAY, an individual,

     Plaintiff,

v.

DONALD B. CRAWFORD, JR., an individual,,

     Defendant.

---

## ORDER

---

    This matter is before the court on Defendant Donald B. Crawford, Jr.'s "Motion to Dismiss Causes of Action Two through Five Pursuant to Fed. R. Civ. P. 12(b)(6) ("Mot.Dism."). [Doc. No. 5, filed October 17, 2008.]  Plaintiff filed a "Response in Opposition to Defendant's Motion to Dismiss" on November 19, 2008 ("Rsp."). [Doc. No. 10.]  Defendant's "Reply Brief in Support of the Motion to Dismiss Causes of Action Two through Five Pursuant to Fed. R. Civ. P. 12(b)(6)" was filed on December 8, 2008. [Doc. No. 13.]  The issue is ripe for review and ruling.

    Chief District Court Judge Wiley Y. Daniel originally presided over this case.  Pursuant to the consent of the parties, the case was transferred with full jurisdiction pursuant to Title 28 U.S.C. § 636(c) to a Magistrate Judge and this court was drawn on April 16, 2009. [Doc. Nos. 25, 26, and 27.]

The partial Motion to Dismiss requests dismissal the following claims: Second Cause of Action for breach of contract on the basis that the Termination and Release of Cohabitation Agreement Between Donald Crawford and Sandra Murray (hereinafter "Termination Agreement") (Compl., Exh. B) is a prohibited, unsigned modification to the Cohabitation Agreement (Compl., Exh. A) rather than a stand-alone contract as portrayed in the Complaint (Mot.Dism. at 2-3); Third Cause of Action on the basis a claim for unjust enrichment is not allowed with respect to the Cohabitation Agreement under California law[1] when an executed and enforceable contract exists (*Id*. at 4-5); Fourth Cause of Action with respect to the Cohabitation Agreement on similar grounds because the equitable remedy of promissory estoppel applies only in the absence of an executed and enforceable contract (*Id*. at 5-6); and Fifth Cause of Action because there is no claim for breach of an implied covenant of good faith and fair dealing under California law (*Id*. at 6).

The plaintiff argues that she is allowed to assert potentially inconsistent claims with respect to the Cohabitation and Termination Agreements at this stage of the litigation. (*Id*. at 14.)  Plaintiff argues that the Termination Agreement represents a separate contractual agreement apart from the Cohabitation Agreement.  (Rsp. at 4-9.)  Plaintiff further argues that California law is inapplicable to the Termination Agreement because it contains its own Colorado choice-of-law provision which was agreed to by the parties.  Since it is undisputed that the Termination Agreement was not signed by Defendant Crawford, the plaintiff argues that the

---

[1]The Cohabitation Agreement contains a California choice of law provision.  (Compl., Exh. A at ¶ 21.)

theories of unjust enrichment and promissory estoppel may well apply to the agreement between the parties which was memorialized in the Termination Agreement pursuant to Colorado law. (*Id*. at 10-12.)  The plaintiff argues finally that Colorado law applies to the claim for breach of the duty of good faith and fair dealing inherent in both the Cohabitation Agreement and the Termination Agreement.  (*Id.* at 13.)

### *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that

3

are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51; *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998) (a court need not accept conclusory allegations.)  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible Cause of Action, such claim survives the motion to dismiss.  *Id*. at 1950.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'."  *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

### *Analysis*

### A.    *Choice of Law*

In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause.  *MidAmerica Construction Management, Inc. v. MasTec North America, Inc.,* 436 F.3d 1257, 1260 (10th Cir. 2006).  *See also Lyon Dev. Co. v.*

*Bus. Men's Assur. Co.*, 76 F.3d 1118, 1122 (10th Cir.1996). Choice of law provisions are generally enforced in Colorado, which "follows the Restatement (Second) of Conflict of Laws for Contracts, § 187, in determining the enforceability of these provisions." *Am. Express Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1238 (D. Colo. 1999). Section 187 of the Restatement "provides that the forum state should apply the law chosen by the parties unless (a) there is no reasonable basis for the parties' choice or (b) the application of the law chosen would be contrary to a fundamental policy of a state which has a materially greater interest in the issue. *Id. See also Gloston v. ITT Federal Services Intern. Corp.*, 2007 WL 1830486, *1 - 2 (D. Colo. 2007); *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir.1 999). Colorado has adopted the "most significant relationship" approach of the Restatement for resolving choice of law questions in contract actions. *Wright v. Martek Power, Inc.*, 314 F. Supp. 2d 1065, 1067-1068 (D. Colo. 2004); *Century 21 Real Estate Corp. v. Meraj Intern. Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir.2003). Trumping the "most significant relationship" test, however, is the overarching default position in a contract dispute that federal courts should apply the law chosen by the parties in their contract absent the special conditions noted above.

At the time the Cohabitation Agreement was executed the Defendant, Donald Crawford, lived in Newport Beach, California and the contract drafted in part by a California attorney and executed in California. (Compl., Exh. A. at 1.)[2] Plaintiff lived in Colorado. (*Id.*) The contract

---

[2]A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991); Fed. R. Civ. P. 10(c).

acknowledges certain aspects of both California and Colorado law.  (*See*, i.e., *id.* at ¶ A, discussing California putative marriage and Colorado common law marriage.)  Neither party acknowledged owning property in either Colorado or California.  (*Id.*, attachment.)  Defendant was represented by a California attorney, Gary Paul Levinson and Plaintiff was represented by a Colorado attorney, Sharon Roth.  (*Id.* at 10 - 11.)  Both indicated that their counsel had fully explained the ramifications of the Agreement.  (*Id.*)

There is no logical reason to go outside the parties' agreement on the choice of law which is applicable to the Cohabitation Agreement.  Therefore, as to that agreement this court shall apply California law.

As to the Termination Agreement, however, the parties dispute whether this is a separate agreement which stands alone or whether the Termination Agreement is a modification of the Cohabitation Agreement.  The Cohabitation Agreement provides

> 23.    Modification, Termination: This Agreement may be altered, amended, or modified, only by an instrument in writing expressly referring to this Agreement, executed, signed and acknowledged by the parties thereto, and by no other means. Each of the parties waives the right to claim, contend, or assert in the future that this Agreement was modified, superseded or changed by an oral agreement, course of conduct or estoppel . . . .

(*Id.* at ¶ 23.)  The termination portion of the Cohabitation Agreement provides in bold type,

**"This Agreement shall terminate upon the parties ceasing to cohabitate with one another**

**and by one party delivering to the other, a written document, drafted and signed by the terminating party, indicating a desire to terminate the agreement.**"   (*Id*.)[3]

The Cohabitation Agreement provides for a monetary damages remedy if one or the other parties to the Agreement were to terminate prior to 2010, as follows, "Donald shall be obligated to pay Sandra 22.5% of the gross salary and commission that he is earning at the time of payment for a period of 30 (thirty) consecutive months." (*Id*. at ¶ 17(b).)  There were several other provisions applicable to early termination of the agreement.  In fact, it appears that it was the possibility of an early termination of the Agreement by Defendant, as well as the desire of the parties to keep their separate property free from claims, which was the driving force behind execution of the Cohabitation Agreement in the first instance.

Considering the factual allegations of the Complaint as true—as I must for purposes of considering a Motion to Dismiss—the parties cohabitated in an apartment where they were both parties to the lease in Colorado.  (Compl. at ¶ 4, 15.)  Further, at the end of their relationship, Defendant indicated "a desire to terminate the agreement" by "overnight[ing] to her [plaintiff] a one-paragraph letter notifying her that the Cohabitation Agreement was thereby terminated." (Compl. at 1.)  At some point thereafter, the Defendant sent the Plaintiff a proposed "Termination and Release Agreement."  The Complaint does not state whether the parties had "ceas[ed] to cohabitate with one another" at the time of delivery of the one-paragraph letter on February 26, 2007 (Compl. ¶ 16); however, since it alleges that "Crawford terminated the

---

[3]  The remainder of the paragraph deals with the eventuality of either party's death.

parties' relationship," the reasonable inference drawn in Plaintiff's favor is that cohabitation ceased at least as of the delivery of the letter.  (*Id.*)

The date of tender of the Termination Agreement is not specified in the Complaint; however, Plaintiff signed the Termination Agreement on June 18, 2008, almost sixteen months after the Defendant terminated the Cohabitation Agreement.  (Compl., Exh. B at 5.)  The termination of the Cohabitation Agreement occurred on February 26, 2007.  Well over a year after the first contract had been terminated there would have been no ability of either party to modify that agreement.  The reasonable inference to be drawn in plaintiff's favor at this point is that the Termination Agreement was a completely separate agreement entered into to settle the dispute between the parties which had arisen because Defendant was not paying any money pursuant to the terms of the Cohabitation Agreement.  Therefore, Colorado law would be applicable to the Termination Agreement as a result of its choice of law provision.  (Compl., Exh. B, ¶ 16.)

**B.     *Second Cause of Action; Breach of Contract - Termination Agreement***

The Complaint properly sets forth alternative arguments[4] that: first, the Cohabitation Agreement should be enforced on its terms, including acknowledgment of a duty of good faith

---

[4]     Fed. R. Civ. P. 8(d)(2) and (3) provide: "(2)  Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient; (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

and fair dealing[5]; second, if the provisions of the Cohabitation Agreement are not enforceable, the parties' later agreement to settle their differences should be enforced, again including an implied duty of good faith and fair dealing; and third, if neither the Cohabitation Agreement nor the Termination Agreement are enforceable, the plaintiff should be awarded compensation on the bases of the equitable theories of unjust enrichment and/or promissory estoppel.

As set forth *infra*, in order to overcome a motion to dismiss the plaintiff is entitled to an "assumption of truth" for the factual allegations of her complaint. *See Iqbal*, 129 S. Ct. at 1949–51. The Complaint alleges that after having terminated the Cohabitation Agreement in February 2007, the Plaintiff sought "compensation from Crawford in accordance with the provisions of Paragraph 17 of the Cohabitation Agreement" (Compl. ¶ 18), that "Crawford refused to make payments to Ms. Murray" (Compl. ¶ 19), and that "Crawford engaged an attorney to draft a new agreement, the Termination Agreement . . . ." (Compl. ¶ 20.). The Termination Agreement is attached to the Complaint as Exhibit B. The Plaintiff signed the Termination Agreement on June 18, 2008, accepting its terms some sixteen months after Defendant originally terminated the Cohabitation Agreement. (Compl., Exh. B at 5.)

The Agreement states in its first paragraph, "This Termination and Release Agreement . . . details the termination of the Cohabitation Agreement Between Donald Crawford and Sandra Murray, dated September 29, 2005 (the "Previous Agreement"), and the full release of the Parties under that agreement." (*Id.* at 1.) Section E of the Termination Agreement provides

---

[5]     This claim is not challenged at this stage of the proceedings in the Motion to Dismiss.

> Both Parties desire to settle all duties and obligations between them under the
> Previous Agreement, the entire relationship between the Parties, both before and
> after the Previous Agreement, all previous verbal and written communication, and
> all previous conduct between the Parties, as detailed herein.

(*Id.*, Recital E.).  Donald Crawford did not sign the Termination Agreement.  (*Id.* at 5.)  Donald

Crawford did not pay any money to Plaintiff under the terms of the Termination Agreement.

(Compl. ¶ 23.)

In its ordinary meaning, a "contract" is a legally enforceable bargain, formed by mutual

consent and supported by consideration.  *Bowsher v. Merck & Co., Inc.,*  460 U.S. 824, 862

(1983).  In Colorado, "[a] contract is an agreement between two or more persons or entities

[which] . . . consists of an offer and an acceptance of that offer, and must be supported by

consideration.  If any one of these three elements is missing, there is no contract."  Colo. Jury

Instr., Civil 30:2 (4th ed.)  In order to establish the existence of a contract, the parties must agree

upon all essential terms.  *Federal Lumber Co. v. Wheeler,* 643 P.2d 31, 36 (Colo. 1981); *Stice v.*

*Peterson*, 144 Colo. 219, 355 P.2d 948 (1960).

The Complaint factually alleges that the Defendant drafted and proposed terms of a

settlement agreement to the Plaintiff.  The Plaintiff accepted the terms proposed by the

Defendant.  The consideration alleged in the Complaint was that Plaintiff would relinquish her

claim to "compensation from Crawford in accordance with the provisions of Paragraph 17 of the

Cohabitation Agreement."  (Compl. ¶ 18.)  The Plaintiff has, then, stated facts in support of the

allegation that the parties sufficiently agreed on all material terms of the settlement agreement as

required by Colorado law to form a binding contract.  *See DiFrancesco v. Particle Interconnect*

*Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001); *Fed. Lumber Co. v. Wheeler*, 643 P.2d 31 (Colo. 1981).   The Complaint, therefore, does contain sufficient factual allegations, deemed at this stage of the proceedings to be true, sufficient to "plausibly suggest an entitlement to relief" under her theory of breach of contract in Claim Two of the Complaint.

      **C.**      ***Fifth Cause of Action - Breach of Implied Duty of Good Faith and Fair Dealing (Cohabitation Agreement and Termination Agreement)***

          **1.**      **Cohabitation Agreement**

In California, "[e]very contract imposes on each party an implied duty of good faith and fair dealing," which mandates that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Chateau Chamberay Homeowners Assoc. v. Associated Intern. Ins. Co.*, 90 Cal. App. 4th 335, 345, 108 Cal. Rptr. 2d 776 (2001); *Anderson v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 2441086, * 5 (E.D. Cal. 2008); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1158 (9th Cir.2002).   California's recognition of the implied duty of good faith and fair dealing "'is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.'" *McKnight v. Torres,* 563 F.3d 890, 893 (9th Cir. 2009) (quoting *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 90 Cal. Rptr. 3d 453, 476 (2009).  *See also Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094, 8 Cal. Rptr. 3d 233 (2004). The implied duty of good faith and fair dealing, however, "operates only to prevent a party from taking an action that will injure the right of the other to receive the benefits of the agreement. *Id.; Major v. Western Home Ins. Co.*, 169 Cal. App. 4th 1197, 1209, 87 Cal. Rptr. 3d 556 (2009).

This implied duty neither "alter [s] specific obligations set forth in the contract" nor "add[s] duties independent of the contractual relationship." *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1503 (9th Cir. 1994) (applying California law).

In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged. *Love v. The Mail on Sunday*, 2006 WL 4046180, *7 (C. D. Cal. 2006) (dismissing breach of contract claim on motion to dismiss where complaint did not identify any specific contractual provision from which the implied covenant of good faith and fair dealing arose). As the court explained in *Love*,

> The obligations imposed by the covenant of good faith and fair dealing are not those set out in the terms of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged-fairly and in good faith. However, what that duty embraces is dependent upon the nature of the bargain struck between the parties and the legitimate expectations of the parties which arise from the contract. Further, it is universally recognized that the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. (internal citations omitted.)

*Love*, at *7. See *Inter-Mark USA, Inc. v. Intuit, Inc.* 2008 WL 552482, *6–7 (N.D. Cal. 2008).

"Where breach of an actual term [of a contract] is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Gabana Gulf Distribution, Ltd. v. GAP Intern. Sales, Inc.*, 2008 WL 111223, *12 (N.D. Cal. 2008) For these reasons, in California a breach of the covenant of good faith and fair dealing is usually considered a tort claim and describes something in addition to a standard breach of a term of a contract. *Freeman & Mills v. Belcher Oil Co.*, 11 Cal. 4th 85, 102, 44 Cal. Rptr. 3d 420, 900 P.2d 669 (1995). The upshot is, then, that

to constitute a breach of the covenant of good faith and fair dealing in connection with the

Cohabitation Agreement, Plaintiff must allege not only that Crawford breached the Cohabitation

Agreement, but that he did so in bad faith.

The Complaint alleges that Defendant Crawford terminated the Cohabitation Agreement

"rather unconventionally in 2007" by "[i]nstead of breaking up with her personally, he simply

overnighted to her a one-paragraph letter notifying her that the Cohabitation Agreement was

thereby terminated."  (Compl. at 1 and ¶ 16).  Plaintiff alleges that the next day Crawford

acquired ownership of a large radio station which substantially increased his salary and

commissions.  (Compl. ¶ 17.)

The Cohabitation Agreement provided, however,

> The parties agree that any earnings, income or benefits, no matter their nature,
> kind or source, from and after the cohabitation, including but not limited to salary
> bonuses, stock options, deferred compensation, and retirement benefits, shall be
> the separate property of the party earning or acquiring such earnings, income or
> benefits as though the contemplated cohabitation had never occurred.

(Compl., Exh. A, ¶ 10.)  Several provisions of the Cohabitation Agreement concerned an

understanding by each party that 'separate property' would forever remain separate and free

from claims by the other except under very limited circumstances.  The Plaintiff alleges that after

terminating the Cohabitation Agreement, Crawford "refused to pay anything under the

Cohabitation Agreement . . . ."  (Compl. at 1 and ¶ 19.)  Again, however, the Cohabitation

Agreement provided,

> "[s]hould either party terminate this agreement prior to 2010, Donald shall be
> obligated to pay Sandra 22.5% of the **gross** salary and commission [emphasis in

original] that he is earning at the time of payment for a period of 30 (thirty) consecutive months.

(Compl., Exh. A, ¶ 17(b).)

In actuality, then, the fact that Crawford bought the radio station the day after terminating his relationship with Plaintiff is completely irrelevant to Defendant's obligations, if any, to Plaintiff pursuant to the Cohabitation Agreement.  The contract terms provided that Crawford's salary and commissions—allegedly increased the day after the break up—were at all times his separate property whether the Cohabitation Agreement was terminated or in full force.  Further, the contract provided that the calculation of Crawford's gross salary and commissions during the thirty months following the termination of the agreement would be calculated at the time of payment; i.e., each month as a payment came due for each of the successive thirty months.  The timing of the termination of the Cohabitation Agreement vis-a-vie the acquisition of the radio station would make no difference in the calculated payment amounts due to Plaintiff  because this increased salary and commission would be accounted in Defendant's gross earnings for the entire period.  The averment that the immediate acquisition of the radio station following Defendant's admittedly curt method of ending a multi-year relationship does not constitute bad faith because it does not in any way affect the obligations of Defendant Crawford under the terms of the Cohabitation Agreement.  The claim of breach of the Implied Duty of Good Faith and Fair Dealing with respect to the Cohabitation Agreement is, therefore, superfluous and the redundancy cannot be cured by amendment of the complaint.  Plaintiff has, therefore, failed to

state a claim that is plausibly separate from the breach of the contractual term in paragraph 17(b).

### 2. *Termination Agreement*

Having found that Plaintiff has successfully stated a claim for breach of the Termination Agreement sufficient to withstand a Fed. R. Civ. P. 12(b)(6) challenge under *Iqbal*, I will address the application of the implied duty of good faith and fair dealing to the Termination Agreement, as well.

Colorado recognizes that every contract contains an implied duty of good faith and fair dealing. *Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Amoco Oil Co. v. Ervin* , 908 P.2d 493, 498 (Colo. 1995). *See also Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 717 (10th Cir. 1985) (explaining that the franchisor-franchisee relationship is one that requires the parties to deal with one another in good faith and in a commercially reasonable manner).

The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. *See State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo. 1993); *Bonanno v. The Quizno's Franchise Co. LLC,* 2008 WL 638367, *7 (D. Colo. 2008). The duty of good faith and fair dealing, however, only applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time, which is set to occur at a date subsequent to the signing of the contract. *Id.* at *6.

"Discretion in performance occurs when the parties, at formation, defer a decision regarding performance terms of the contract leaving one party to set or control the terms of performance after formation. *Id*. (quoting *Amoco Oil* at 498.)

While the good faith and fair dealing covenant may be used to protect a "weaker" party from a "stronger" party, weakness and strength in this context do not refer to the relative bargaining power of the parties. "The relative strength of the party exercising discretion typically arises from an agreement of the parties to confer control of a contract term on that party. The dependent party then is left to the good faith of the party in control." *Amoco Oil* at 498-99.

The Complaint is wholly deficient in setting forth facts to support this claim under Colorado law. There is no allegation contained in any portion of the Complaint, including the terms of the Termination Agreement itself, which allows either party to exercise discretion as to the performance of one of its terms. The Complaint alleges that pursuant to the Termination Agreement, Defendant is obligated to pay to Plaintiff a total sum of $278,000.00 in one lump sum payment deemed as a gift in exchange for a full release of all future claims by Plaintiff arising out of their cohabitation and relationship. (Compl. at ¶ 21.) Further, the Complaint alleges Defendant is obligated to maintain the life insurance policy which was the subject of Section 17(c) of the Cohabitation Agreement for the sole benefit of Plaintiff. (Compl., ¶ 22.) There is nothing discretionary about these terms.

Accepting as true the factual allegations of the Complaint, those facts do not "plausibly suggest an entitlement to relief" pursuant to a claim of breach of the implied duty of good faith

16

and fair dealing.  *Id*. at 1951. As to this agreement as well, the deficiencies in the Complaint

cannot be cured by amendment.

Therefore, the Plaintiff having failed to state a plausible claim for relief for breach of the

duty of good faith and fair dealing with respect to either contract and which failure cannot be

cured by amendment, Plaintiff's Fifth Cause of Action must be dismissed with prejudice.

**D.**     ***Third Cause of Action - Unjust Enrichment and Fourth Cause of Action -***
           ***Promissory Estoppel (Cohabitation Agreement and Termination Agreement)***

Plaintiff claims that if neither of the breach of contract claims is successful, she should be

awarded damages on the basis of the equitable remedies of unjust enrichment and/or promissory

estoppel.  Both unjust enrichment and promissory estoppel are equitable claims.  Equity may not

be used to fashion relief when there is a "plain, speedy, [and] adequate remedy at law." *Szaloczi*

*v. John R. Behrmann Revocable Trust*, 90 P.3d 835, 842 (Colo.2004).  In a contractual context,

"a party cannot recover for unjust enrichment by asserting a quasi-contract when an express

contract covers the same subject matter because the express contract precludes any

implied-in-law contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist*., 77 P.3d

814, 816 (Colo. App. 2003).   These claims have been pleaded in the Complaint in the alternative

and the existence of either equitable remedy depends wholly on the inapplicability of an express

contract.  Given that there would be no express contract to control, the forum state's "most

significant relationship test," would apply to the choice-of-law question.  *See Wright v. Martek*

*Power, Inc.*, 314 F. Supp. 2d at 1067–68.

Although the parties' original cohabitation contract was executed in California and contained a California choice of law provision, the parties do not dispute that they largely cohabitated together in Colorado where they jointly leased an apartment.  The Defendant is now a resident of Texas; however, he owns and manages two radio stations in Colorado as well as more in Texas.  (Compl. ¶ 2.)  The issues involved in the equitable claims largely involve "performance," whether with or without a contract, which took place in Colorado.  This state, therefore, has the greatest interest in ensuring the parties are treated equitably as a result of their interactions, one with another, taking place in this state.  I find Colorado law applies to the claims in equity.

Unjust enrichment is a form of contract, or quasi-contract, implied by law that does not rely upon a promise between parties.  *Harris Group, Inc. v. Robinson,* 2009 WL 540662, *15 (Colo. App. 2009)  The elements of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it.  *Id.; Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008).  Equity is a form of restitution designed to restore a party to his or her prior status.  Restatement (First) of Restitution § 1 (1937).  The scope of the equitable remedy of unjust enrichment is broad, "cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another." *Robinson*, at 1007.  Trial courts must engage in fact-based inquiries, and then make extensive factual findings, to determine whether a party is entitled to recover under an unjust enrichment claim.  *Harris Group, Inc.* at *15.

18

Promissory estoppel and breach of contract are related concepts. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008). In Colorado recovery on a theory of promissory estoppel is permissible when there is no enforceable contract. *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007). Thus, if a plaintiff fails to prove a breach of contract claim, he or she may nevertheless be able to recover on a promissory estoppel claim. *Marquardt,* at 1129; *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987). Promissory estoppel is an extension of the basic contract principle that one who makes a promise must be required to keep it. *Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App. 2003).

Colorado courts have adopted the definition of promissory estoppel found in the Restatement (Second) of Contracts § 90 (1981). *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900, 905 (Colo.1982). The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Marquardt,* at 1129. *See Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995); Restatement § 90. Reliance can be shown where a party alters his or her position as a consequence of another's conduct. *Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 77 n.72 (Colo. 1996). Ultimately, whether a plaintiff has justifiably relied on a defendant's promise is an issue of law for the trial court. *Nelson*, 908 P.2d at 110; *see also Atsepoyi v. Tandy Corp.*, 51 F. Supp. 2d 1120, 1126 (D. Colo. 1999).

19

The factual averments in the Complaint are that prior to beginning a relationship with Defendant in 1999, Plaintiff had a full-time career as a professional market executive and training consultant.  (Compl. ¶ 6.)  Plaintiff forfeited her career entirely at the urging of the Defendant to become his full-time companion and oversee aspects of his personal and professional obligations.  (Compl. ¶ 7.)  From May 2002, when Plaintiff gave up her career, Defendant became completely responsible for all Plaintiff's living expenses and contributed money toward the care of Plaintiff's daughter.  (Compl. ¶ 8.)  The parties entered into the written Cohabitation Agreement in 2005.  (Compl. ¶ 9.)  The Defendant, in the Cohabitation Agreement, agreed to pay Plaintiff a sum of money each month for thirty months should their relationship terminate prior to the year 2010.  (Compl. ¶¶ 10-11.)  Defendant unilaterally terminated the Cohabitation Agreement on February 26, 2007, prior to the year 2010.  (Compl. ¶16.)  Defendant has failed to make any payments to Plaintiff after he terminated the Cohabitation Agreement.  (Compl. ¶¶ 16, 19.)  Defendant submitted a proposal of settlement of all claims to Plaintiff and she accepted the terms of settlement on June 18, 2008.  (Compl. ¶ and Exh. B at 5.)   Defendant has failed to make any payments to Plaintiff pursuant to the terms of the Termination Agreement.  (Compl. ¶ 23.)

For purposes of considering a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), these facts are presumed true.  *Iqbal* at 1951.  Given the elements of the claim of unjust enrichment—that Defendant received the benefit of Plaintiff's work and support unencumbered by her own career and then terminated the relationship without any provision for the Plaintiff's living expenses after years of unemployment, arguably creating circumstances making it unjust

for the defendant to retain the benefit without paying for it—the Plaintiff has stated a plausible

claim for unjust enrichment.  Further, given the elements of the claim of promissory

estoppel—that Defendant promised to pay a sum of money to Plaintiff for a period of thirty

months if their relationship ended prior to 2010 and that Plaintiff did rely on that promise in

giving up her own means of earning a living and was left without support when Defendant broke

that promise—the Plaintiff has stated a plausible claim for enforcement of the promise to prevent

injustice.  Plaintiff has also successfully set forth facts supporting her alternative allegation that

Defendant promised to resolve their dispute over the Cohabitation Agreement payments by

sending her a lawyer-drafted Termination Agreement which she relied upon and signed and, if

Plaintiff is not otherwise compensated under other claims set forth in the Complaint, she has set

forth a plausible claim that this promise should be enforced to prevent injustice.

Therefore, Plaintiff's Third and Fourth Causes of Action do state plausible claims for

relief sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Therefore, it is **ORDERED**

Defendant Donald B. Crawford, Jr.'s "Motion to Dismiss Causes of Action Two through

Five Pursuant to Fed. R. Civ. P. 12(b)(6). ("Mot.Dism.") [Doc. No. 5] is **GRANTED in part**

and **DENIED in part**.  The Motion is **GRANTED** with respect to Plaintiff's Fifth Cause of

Action and those claims are **DISMISSED with prejudice**.   The Motion is **DENIED** otherwise.

     Dated this 26th day of June, 2009.

                    **BY THE COURT:**

                    _____

                    Kathleen M. Tafoya
                    United States Magistrate Judge