IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–02045–KMT–KLM

SANDRA MURRAY, an individual,

    Plaintiff,

v.

DONALD B. CRAWFORD, JR., an individual,

    Defendant.

---

## ORDER

---

This matter is before the court on Defendant Donald B. Crawford, Jr's Motion for Partial Summary Judgment" (hereinafter "Motion") [Doc. No. 36, filed August 31, 2009]. The Plaintiff, Sandra Murray, filed her "Response in Opposition to Motion for Partial Summary Judgment" [Doc. No. 40] (hereinafter "Response") on September 18, 2009 and the Defendant filed his "Reply Brief in Support of the Motion for Partial Summary Judgment" [Doc. No. 43] (hereinafter "Reply") on October 15, 2009. The matter is ripe for review and ruling.

Defendant seeks dismissal of the plaintiff's Second Cause of Action, Breach of the Termination Agreement (Compl., Doc. No. 1) on the bases that: 1) the oral agreement between the parties in July 2007 was an unlawful modification of the Cohabitation Agreement; 2) the Termination Agreement was not executed by all parties and therefore has no effect; 3) the offer from the defendant contained in the Termination Agreement was rejected by a counteroffer from

the plaintiff; 4) the plaintiff did not accept the offer represented by the Termination Agreement in a timely fashion and the offer therefore expired, and; 5) the plaintiff did not comply with the requirements for acceptance of the Termination Agreement because no Certificate of Counsel was provided.

### *BACKGROUND*

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to the pending Motion.

After being together as a couple since 1999, the defendant and the plaintiff, in 2002, changed their relationship by agreeing to terminate the plaintiff's employment outside the home and agreeing that the defendant would become financially responsible for her and her young daughter. (Compl., Exh. A, Cohabitation Agreement at ¶ A.) They later entered into a written Cohabitation Agreement providing, in part, that Defendant would pay Plaintiff monthly a certain percentage of his income if their relationship ended before 2010. (*Id.* at 17(b).)

On January 30, 2007, Defendant sent Plaintiff written notice he was terminating their relationship under the terms of the Cohabitation Agreement. (Compl.) From February 11, 2007 until approximately August 2007, the parties entered into communications about the possibility of a reconciliation, adjustments to an annuity to which Defendant was contributing for Plaintiff's benefit, the specific manner of execution of paragraph 17(b) of the Cohabitation Agreement, and various issues related to separating the former joint household.

  Paragraph 17 provides, in part

> a) Commencing the month this agreement is executed, Donald shall contribute the sum of $2,000 per month, into an annuity (or other such investments as agreed to by Sandra and Donald), that will be established for the benefit of Sandra. Said investment, will be the sole and separate property of Sandra. Donald will be obligated to pay this sum, into the annuity or investment, each and every month thereafter and for so long as this agreement is in effect and not terminated by either party. Donald's obligation to make said monetary payments shall cease (1) at such time as Donald becomes involuntarily unemployed, or (2) upon leaving his employment for "good cause." If and when Donald is reemployed, Donald shall be obligated to pay 4% of his gross income into said investment/annuity on a monthly basis until termination of the agreement.
>
> b) In addition, should either party terminate this agreement prior to 2010, Donald shall be obligated to pay Sandra 22.5% of the gross salary and commission that he is earning at the time of payment, for a period of 30(thirty) consecutive months. Should this agreement remain in full force and effect through 2010, but terminate prior to2015, Donald shall be obligated to pay Sandra 28% of his gross salary and commission that he is earning at the time of payment, for a period of 30 (thirty) consecutive months. Should this agreement be terminated after 2015, Donald shall be obligated to pay Sandra 36% of his gross salary and commission that he is earning at the time of payment, for a period of30 (thirty) consecutive months.

(Mot., Exh. A.)

  It is undisputed that close in time to the January 30, 2007 notice from the defendant terminating his relationship with Plaintiff, the defendant became an owner of certain radio stations and began receiving compensation as an owner, rather than deriving his income from salary and commissions. This change began a dispute about how to effectuate paragraph 17(b).

  Between February and July 2007, Defendant performed in part pursuant to the Cohabitation Agreement and assured the plaintiff, "[k]now that you will surely receive your monies, and then some, fair and square; perhaps sooner than later, if possible." (Mot., Exh. B, email to plaintiff from defendant, dated February 11, 2007, at 3.) The defendant also stated,

3

"the agreement payments started last month." (*Id.*) The parties also discussed the annuity referenced in paragraph 17(a) and monies which Defendant still owed under that provision. (Mot., Exh. D, email from the defendant to the plaintiff dated February 26, 2007, at 4.) The plaintiff and defendant negotiated over whether or not the plaintiff would assume payments on an automobile, who would pay for the automobile insurance, whether a life insurance policy would remain intact, responsibility for various other household bills and the agreement of the defendant to allow plaintiff to continue her health insurance with defendant paying the premiums. (Mot., Exh. C, email from plaintiff to defendant dated February 22, 2007.) While agreeing on many of their separation responsibilities, the parties continued to negotiate over the meaning of paragraph 17(b) of the Cohabitation Agreement and what monies would be payable to the plaintiff from the defendant given his new compensation arrangement. (Mot., Exh. D at 3-4.) At one point the defendant proposed to pay plaintiff the sum of $4,302.00 per month under the terms of the agreement, based upon his calculation of his present likely income of $234,000 per year (*Id.* at 5) and acknowledged that the parties were considering items and amounts which were "not required under the agreement." (*Id.*) The plaintiff did not agree to the monthly payment proposed by the defendant, objecting that the amount was not what the parties contemplated when the agreement was originally signed. (Mot., Exh. E, letter to defendant from plaintiff dated March 9, 2007, at 2.) The parties continued to dispute the monthly amount owed by the defendant to plaintiff during April and May 2007. (Mot., Exh. F, email string with dates of April 25 - 30, 2007.)

The negotiations became increasingly hostile between the parties regarding the payments due under paragraph 17(b) of the Cohabitation Agreement. In an email from plaintiff to defendant dated May 31, 2007, plaintiff stated

> your income will be based completely on imputed income, meaning what the business have (sic) made in the past, not your supposed current salary. That is per California & Colorado law  - this I have already ascertained with several different attorneys. There is plenty of case law to substantiate this; right now it seems obvious that you are acting in a fraudulent manner by coming up with a salary that is a quarter of what you used to make; not to mention the timing of service. Now you own several stations that will produce a lot more income than what you have recently stated."

(Mot, Exh. G, email with string attached dated May 31, 2007 from Plaintiff to Defendant, at 1.) The defendant responded, in part, "Your attorneys have my number, the ones who will be the only veritable winners in the end, and that is a long ways away." (*Id.* at 6.)

Finally, in July 2007, the parties appeared to come to an agreement concerning the remaining issues between them and the defendant's obligations pursuant to the Cohabitation Agreement. In an email dated July 30, 2007 to the plaintiff, the defendant referenced a twenty minute telephone call between the two, and stated,

> I will commence the construction of the agreement Wednesday after I return. I would say that should take a week or so, then you and yours can look at it for final agreement. I am reviewing the tax matter to see how much we are talking in terms of you declaring it as income or for me as a write-off. That may stall things since it is more-less money for both of us. We will see. Compromise may be the only way to go on this one as well, such as half-way, whatever that is."

(Mot., Exh. H.) Further, the defendant agreed to maintain health insurance for the plaintiff for "another month." (*Id.*) On August 31, 2007, the defendant sent another email concerning the parties oral agreement. The plaintiff alleges the email stated

5

> [T]he good news is that I have now secured the $278,000 that we have agreed to that would be my payment-gift to you to permanently resolve our concern. It is ready to be transferred to you once you sign the release form. Susan Larsen is working on that and should have it for your review next Friday."

Resp., Exh. A, Affidavit of Sandra Murray at ¶ 13.[1]

On September 25, 2007, the defendant sent an email and the document at issue in the Second Claim for Relief, the Termination Agreement[2], to the plaintiff requesting, "if there are no changes, then print two copies, mail to me both originals with the blanks filled in; your signature and date; your attorney's signature and date." The defendant then promised that after he sent the signed and notarized Termination Agreement to his attorney, the attorney would send a fully executed original to the plaintiff and "the money will come shortly, thereafter, preferably electronically." (*Id.*)

After receipt of the Termination Agreement, during October, 2007, Ms. Murray attempted on several occasions to contact Mr. Crawford by telephone and by email, primarily regarding termination of her health insurance benefits and her need to obtain COBRA information. (Mot., Exhs. K, L, M). She also repeatedly requested a "business related phone call" to discuss "several questions/concerns regarding the proposed settlement that your attorney

---

[1] The plaintiff does not attach a copy of the email to her Affidavit. The defendant objects to the court's consideration of the alleged email as "hearsay," however in his Affidavit (Mot., Exh. N, ¶ 7) the defendant admits, "[o]n August 31, 2007, I sent Ms. Murray an e-mail stating that my Colorado attorney, Susan Larson, was preparing a draft settlement agreement." Therefore, the court considers this communication undisputed.

[2] A copy of the Termination Agreement is attached to the Complaint at Exh. B, and by both parties to the Motion and the Response.

sent." (Mot., Exhs. K, L)  The defendant alleges he had such a discussion with the plaintiff in November 2007 wherein she requested that defendant also agree to continue to pay for her health insurance and add a provision that would ensure continued life insurance coverage if the existing policy lapsed.  (Mot., Exh. N, Affidavit of Crawford, ¶ 9.)  The defendant refused both alleged requests.  (*Id.*)

In February 2008, Ms. Murray again tried to communicate with the defendant in February through June 2008 on several occasions, but he refused to respond.  (*Id.* at ¶ 11.)  Plaintiff's attorney, Barry Schwartz, then began to communicate with the defendant, however the defendant remained steadfast that he would not make any changes to the Termination Agreement, even in light of certain incorrect representations which were included in the September 25, 2007 document.  (Resp., Exh. B, Affidavit of Barry Schwartz, ¶¶ 5-6.)  During this time period, the defendant gave Mr. Schwartz detailed instructions with respect to returning the signed Termination Agreement to him via his Denver attorney.  (*Id.* at ¶ 11.)  On June 18, 2008, through her counsel, the plaintiff executed the Termination Agreement and sent it to defendant's attorney, Susan Larson without change.  (*Id.* ; Mot., Exh. N at ¶ 15.)  The parties dispute whether or not the executed Termination Agreement contained a signed Certificate of Counsel from Mr. Schwartz.

With the exception of some payment made early in 2007, Defendant has not been paying Plaintiff pursuant to either the Cohabitation Agreement **or** pursuant to the Termination Agreement – a period of almost three years.  It is not clear to the court whether the annuity

pursuant to paragraph 17(a) of the Cohabitation Agreement was made whole by the defendant or whether it was ever released to Plaintiff.

### *LEGAL STANDARD*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom

are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### *ANALYSIS*

Seldom has the court seen a case so rife with issues of intent necessarily destined for jury resolution, beginning from the parties' understanding of how to calculate defendants' required payments to plaintiff pursuant to paragraph 17(b) of the Cohabitation Agreement in light of his change compensation method through to the meaning and understanding of the actions and communications (or lack thereof) of plaintiff and defendant during the year and one-half of negotiations which preceded the filing of the lawsuit. To claim on any level that this is a case where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact is incongruous.

The defendant's argument appears to be that because certain emails and other correspondence have been preserved, the words contained in the correspondence are "facts" and not subject to any but one interpretation. If that were the case, no controversy containing

documentary evidence would ever be fit for trial. Juries, as finders of fact, are the interpreters of the meaning of words, phrases, and actions in the context of the activities transpiring at the relevant time as demonstrated by the evidence presented. It is within their province to draw inferences from the evidence and to determine credibility of the witnesses. *Bledsoe v. Bruce*, 569 F.3d 1223, 1237 (10th Cir. 2009); *Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001); *Lamon v. Shawnee*, 972 F.2d 1145, 1159 (10th Cir. 1992). The general rule is that juries are not bound to believe opinions of witnesses, even if they are qualified as experts. *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir.2001); *Diestel v. Hines,* 506 F.3d 1249, 1268 (10th Cir. 2007). It is within the province of the jury, as well, to determine what specific weight is to be given to individual pieces of evidence. *United States v. Frost*, 318 Fed. Appx. 664, 668 (10th Cir. 2009). As the Tenth Circuit has stated,

> the jury ... not the court ... is the fact finding body. It weighs the contradictory evidence <u>and inferences</u>, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1158 (10th Cir.1981) (emphasis added).

*United States v. Little*, 308 Fed. Appx. 256, 260 (10th Cir. 2009). *See also United States v. Hylton*, 308 Fed. Appx. 262, 264-65 (10th Cir. 2009)(same).

### A. *Whether the Oral Agreement to Settle in July 2007 was an Unauthorized Modification of the Cohabitation Agreement.*

Between February and July 2007, the parties clearly were in dispute over the meaning and interpretation of paragraph 17(b) of the Cohabitation Agreement. As admitted by the Defendant, neither party "believed that Defendant had no future payment obligations under

Paragraph 17(B) when the Cohabitation Agreement 'terminated.'" (Mot. at 13.) The question, in light of defendant's termination of the living arrangement with the plaintiff immediately corresponding to his purchase of several radio stations, was exactly how to calculate the future payment obligations given that defendant would no longer be compensated by salary and/or commission.

As noted, the parties discussed several options for calculating an appropriate monthly payment from the defendant to the plaintiff for the thirty month period contemplated by the Cohabitation Agreement and consistent with the intent of the parties at the time they entered into their original agreement. Neither side argued that the Cohabitation Agreement did not control the post-relationship obligations; there was simply a dispute over how to calculate the intended payment given the change of circumstances of the defendant. "A contract is to be interpreted in a manner that effectuates the intent of the parties. *BFN-Greeley, LLC v. Adair Group, Inc.*, 141 P.3d 937,940 (Colo. App. 2006).

As of July 2007, it was clear that the parties would either have to compromise regarding the method of calculation of monthly payments due to the plaintiff pursuant to paragraph 17(b) or they would have to engage in costly litigation to resolve the issue.

California law permits the oral modification of a written contract, even one that expressly forbids it, provided certain conditions are met. Cal. Civ. Code § 1698. "A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." Id. at § 1698(b). This rule is not altered by a contract's inclusion of a no-oral modification clause, as might be inferred from Cal. Civ. Code § 1698(c): "[u]nless the contract

11

otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration." (emphasis added). The Law Revision Commission's comments address the matter: "such a provision would not apply to an oral modification valid under subdivision (b)." The key is the extent to which a modification has been executed by both parties. *See Conley v. Matthes*, 56 Cal. App. 4th 1453, 1466 (2d Dist.1997) (barring application of parol evidence rule to oral modifications already executed); *Klein Norton Co. v. Cohen*, 107 Cal. App. 325, 330, 290 P. 613, 616 ("[i]t is well settled by an abundance of authority in this state that a written agreement may be modified by an oral agreement only when the oral agreement has been executed.") Whether such a modification has been made is a question to be resolved by the trier of fact. *McAsey v. United States Dept. of the Navy*, C 00-2063 JL, C00-2097 JL, 2001 WL 1246620, *3 (N.D. Cal. 2001).

     As noted in 17 C.J.S. *Contracts* § 781

> [i]t is for the trier of fact to decide from conflicting evidence whether the intent to modify existed, whether a new or supplemental contract was made, or a modification agreed to, whether a provision of a contract was waived by the parties, and whether a written contract was modified by subsequent oral agreement or by a course of conduct or dealing. Further, whether a modification has been proved by the required quantum of evidence is also a fact question.

*Id.* at 1.

     There is are factual disputes as to whether the offer by defendant to pay plaintiff a lump sum cash payment of $278,000.00 was a modification of the Cohabitation Agreement or merely an offer to settle the parties dispute over calculation of the amount due to plaintiff pursuant to the

existing paragraph 17(b). Therefore, a grant of partial summary judgment based on this argument is inappropriate.

### B. Whether the Defendant's Failure to Execute the Termination Agreement Rendered the Agreement Null and Void.

Under Colorado law, the existence of an oral contract and the contents of its terms are factual questions. *Lobato v. Bleidt*, 54 F.3d 787, 1995 WL 307609, *1 (10th Cir. 1995); *Dime Box Petroleum Corp. v. Louisiana Land and Exploration Co.*, 938 F.2d 1144, 1149 (10th Cir. 1991); *accord Fair v. Red Lion Inn*, 920 P.2d 820, 825 (Colo. App. 1995). *See also L.U. Cattle Co. v. Wilson*, 714 P.2d 1344, 1347 (Colo. Ct. App. 1986); *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo.1986) (whether a contract exists is a question of fact to be determined by all of the surrounding circumstances.)

Further, even if parties to an oral agreement plan to formalize their oral agreement by a writing, the determination whether they became bound by their agreement before they execute a written document is dependent upon their intent. *Coulter v. Anderson*, 144 Colo. 402, 357 P.2d 76 (1960); *Mohler v. Park County School District*, 32 Colo. App. 388, 515 P.2d 112 (1973). Obviously, the issue of intent is one that can only rarely be resolved by means of a summary judgment. *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 372 (Colo. App.,1994); *Wolther v. Schaarschmidt*, 738 P.2d 25 (Colo. App.1986).

In this case, the agreement reached by the parties was not memorialized in writing until late September 2007. There is evidence supporting a conclusion that the parties had come to an oral agreement to resolve their differences in July 2007. In spite of the written agreement's

dictate that it – the written Termination Agreement – would only "become effective upon the execution of this Agreement," defendant's August 31, 2007 email to plaintiff indicates that the money would be sent to the plaintiff "once you sign the release form."

I find there are significant issues of material fact in dispute concerning the intent of the parties when they entered into the alleged oral agreement for defendant to pay to plaintiff the sum of $278,000.00 to resolve all issues between them. Therefore, a grant of partial summary judgment based on this argument is inappropriate.

### C. *Whether Plaintiff made a Counteroffer to the Defendant and, if so, Whether the Counteroffer Terminated the Defendant's Settlement Offer.*

Again, whether or not plaintiff's numerous entreaties to the defendant to confer over several provisions contained in the written Termination Agreement constituted a counteroffer is a factual question to be decided by a jury. This determination will likely depend in part, on whether or not the jury finds that the parties entered into a binding oral contract, irrespective of the written terms of the Termination Agreement prepared later by the defendant's attorney. There are material issues of fact which must be resolved, such as whether the written Termination Agreement contained misstatements of fact which had not been part of the original oral agreement between plaintiff and defendant – assuming the jury finds there was such an oral agreement – as noted by Barry Schwartz in his affidavit and which, in fairness, needed to be corrected but which did not amount to a counteroffer. The evidence is not clear, contrary to defendant's argument, that plaintiff desired to add terms to the Termination Agreement. An equally availing argument is that plaintiff merely wished to speak to the defendant about

14

continuing her health benefits through his company, which he had been maintaining since the break up in January, and that she sought clarity to the already agreed upon provision that defendant would maintain life insurance for the benefit of plaintiff in the event the defendant changed policy carriers.

Determination of plaintiff's intent with respect to issues about which she sought discussion with defendant prior to signing the Termination Agreement is a question of fact. *See Concrete Contractors, Inc. v. E.B. Roberts Const. Co.*, 664 P.2d 722, 725(Colo. App. 1983). "[I]ssues relative to a party's intent cannot be resolved by summary judgment." *Gulf Ins. Co. v. State*, 607 P.2d 1016, 1019 (Colo. App. 1979); *see Aetna Cas. & Sur. Co. v. Canam Steel Corp.*, 794 P.2d 1077 (Colo. App. 1990) ("[S]ummary judgment was improper as questions of fact still exist as to the parties' intent.") Only the jury is entitled to ponder the intent attributable to statements and actions of the parties and witnesses based on all the evidence in the case as presented from both plaintiff's and defendant's viewpoints. Once the jury has digested the facts, it will make its ultimate decision based upon legal instruction provided by the court.

At this point, then, since there remain material issues of fact in dispute concerning whether the plaintiff's actions constituted a counteroffer, partial summary judgment on this issue is not appropriate.

### D. *Whether the Plaintiff's Acceptance of the Defendant's Offer was Timely.*

Again, although the fact of communications and attempted communications between Defendant and Plaintiff and between Defendant and Plaintiff's attorney are not disputed, the parties rationale, intent, words, and actions are all matters that must be considered by the fact

15

finder in making a determination about what a "reasonable" time for acceptance in this case should be, again assuming the jury gets to that point. It does not appear to be disputed that between September 2007 and June of 2008, the Defendant specifically and uncategorically never withdrew his offer of settlement with direct words, either orally or in writing. Therefore, the parties' intent and the overall circumstances occuring between and among the parties and their counsel during that time period are absolutely critical to the question of whether the offer was accepted within a reasonable time or whether the offer should be deemed withdrawn.

Acceptance is defined as words or conduct that, when objectively viewed, manifests an intent to accept the offer. *Scoular Co. v. Denney*, 151 P.3d 615, 619 (Colo. App. 2006). There is a factual dispute, as noted in section C above, about whether the offer from Defendant was accepted by Plaintiff in July 2007, August 2007, October 2007 or in June 2008. "Whether there has been acceptance is determined by an objective or reasonable person standard." *Id*.

As our system of jurisprudence has long held,

> If the question involve matter of fact with the law, the jury must decide the facts; and it is no error in the court to suffer them to decide the law also at the same time.
> When a rule can be laid down, then the court is to state the rule. But where that cannot be done then it may be left to the jury. This is all that lord Mansfield says in the case of *Tindall v. Brown* [1 Term rep.167].

*Fenwick v. Sears's Administrators*, 1 Cranch 259, 5 U.S. 259, 278, 1803 WL 938, 12 (1803) (concerning reasonable notice in commerce.); *Wiggins v. Burkham*, 77 U.S. 129, 130 (1869) ("what was reasonable time for a debtor to object to his creditor's account, after its presentation to him, is a matter of fact for the consideration of the jury, and not a matter of law to be decided

by the court"); *Louisville Mfg. Co. v. Welch*, 51 U.S. 461 (1850) ("What is a reasonable time must depend upon circumstances of each particular case, and is generally a question of fact for the jury."). *See also Rose v. Colorado Factory Homes*, 10 P.3d 680, 685 (Colo. App. 2000) (jury instructed to determine whether revocation of acceptance occurred within a reasonable time).

Contrary to the argument of defendant (Mot. at 20), the last conversation the parties had about the Termination Agreement was not in November, 2007. There is no dispute that the defendant continued to speak with Plaintiff's attorney from early 2008 through the date the Termination Agreement was executed by the plaintiff. While the defendant continued to refuse to speak directly with the plaintiff, he was conversing about the Termination Agreement with plaintiff's representative, Mr. Schwartz. What weight to give Defendant's continued conversations with Plaintiff's attorney in making the decision about "reasonableness" of time within which to accept the Termination Agreement is a matter for the jury to decide. Whether Defendant's willingness to talk to Mr. Schwartz about the Termination Agreement and his directives to Mr. Schwartz on how to submit the signed document to his attorney reflect an intent on his part to keep the Termination Agreement offer open are, again, matters for resolution by the jury.

Resolution of these contested issues are not appropriate for partial summary judgment.

### E. *Whether the Termination Agreement as Executed by the Plaintiff Bore a Certificate of Counsel and, if not, Whether that Failure Negated the Agreement Between the Parties.*

The issue of whether a Certificate of Counsel was required to fully effectuate the oral agreement or the written Termination Agreement is in dispute in this case. The first time the Certificate of Counsel requirement appeared was in the Termination Agreement sent to the plaintiff by defendant's counsel in September 2007.

Further, there is clearly a disputed issue of fact regarding whether an executed Certificate of Counsel was submitted with the signed Termination Agreement in June 2008. The defendant states he did not receive a Certificate of Counsel with Plaintiff's executed Termination Agreement in June 2008. (Mot. at 21.) Plaintiff's counsel said that he did execute the Certificate of Counsel. (Resp., Exh. B, ¶¶ 10-12.)

Whether or not such a Certificate of Counsel is indeed a material term of the Termination Agreement is not before the court at this juncture. That there is a disputed issue of fact with respect to whether the Certificate of Counsel was executed can hardly be more clear.

Therefore, partial summary judgment is inappropriate on this ground also.

Wherefore, it is **ORDERED**

Defendant Crawford's "Motion for Partial Summary Judgment" [Doc. No. 36] is **DENIED**.

Dated this 12th day of February, 2010.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge