IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–02045–KMT–KLM

SANDRA MURRAY, an individual,

　　Plaintiff,

v.

DONALD B. CRAWFORD, JR., an individual,,

　　Defendant.

---

# ORDER

---

This matter is before the Court on Plaintiff's "Renewed Motion for Judgment as a Matter of Law" filed June 28, 2010. (Doc. No. 94 [Mot.].) Defendant filed his Response on July 19, 2010. (Doc. No. 94 [Resp.].) Plaintiff filed her Reply on August 5, 2010. (Doc. No. 96 [Reply].)

**STATEMENT OF CASE**

The following statement was stipulated by the parties and read by the Court to the jury during *voir dire*.

> In 1999, Mr. Crawford and Ms. Murray began a romantic relationship. A few years later, in early 2002, Mr. Crawford asked Ms. Murray to give up her career to become his life partner. Ms. Murray gave up her vocation as a professional sales and marketing executive and training consultant and directed her time and energy toward supporting Mr. Crawford's professional success, as well as nurturing their relationship. Mr. Crawford agreed at that time to become financially responsible for Ms. Murray and her young daughter. The parties entered into a written agreement, entitled the Cohabitation Agreement, providing,

among other things, that Mr. Crawford would pay Ms. Murray a certain percentage of his salary and commissions if they broke up. After terminating the relationship, Mr. Crawford requested that Ms. Murray negotiate an alternate resolution to payment under that agreement. After some months of back and forth discussion, Mr. Crawford offered Ms. Murray a settlement comprising a lump-sum payment of $278,000, a paid-up life insurance policy, and thirty-months of health coverage through his company. Ms. Murray and Mr. Crawford met in person and entered into a verbal agreement for Mr. Crawford to pay the $278,000 and to maintain the life insurance policy in her benefit. Mr. Crawford offered to memorialize that agreement in a writing, called the Termination and Release Agreement. Mr. Crawford's lawyer drafted a document memorializing the parties' agreement, Mr. Crawford sent it to Ms. Murray, and she signed it as drafted. Mr. Crawford refuses to pay Ms. Murray under the Termination and Release Agreement.

Based on these circumstances, Ms. Murray asserts three legal claims for relief: First, Ms. Murray asserts a breach of contract claim based on Mr. Crawford's breach of the parties' verbal contract entered into in 2007, which is memorialized in a written document entitled the Termination and Release Agreement. Plaintiff claims that Mr. Crawford breached this contract by failing to pay Ms. Murray $278,000 in a one-time lump sum payment and by failing to maintain a paid-up life insurance policy valued at $1,250,000 for Ms. Murray's sole benefit. Plaintiff asserts that Mr. Crawford undertook these contractual obligations as a settlement of his obligations to Ms. Murray under a previous contractual agreement, entitled the Cohabitation Agreement, which the parties entered into in 2005, during their romantic relationship. In this case, plaintiff only seeks to recover on her breach of contract claim for Mr. Crawford's breach of the later settlement contract, not for obligations arising under the Cohabitation Agreement.

Second, Ms. Murray asserts a claim for promissory estoppel. This claim is premised on Mr. Crawford's promises to make the $278,000 lump sum payment and maintain an up-to-date life insurance policy in the amount of $1,250,000 for Ms. Murray's sole benefit. Ms. Murray claims that because Mr. Crawford made these promises in order to cause Ms. Murray to give up her rights under the 2005 Cohabitation Agreement, and Ms. Murray, to her detriment, agreed to do so, Mr. Crawford's promises must be enforced. Ms. Murray's promissory estoppel claim is an alternate claim to her breach of contract claim and Ms. Murray only seeks to enforce Mr. Crawford's promises under this theory to the extent that you, ladies and gentlemen of the jury, find that there was not a contract between the parties.

Third, Ms. Murray asserts a claim for unjust enrichment. This claim is also an alternate claim to Ms. Murray's breach of contract and promissory estoppel claims. Ms. Murray asserts that Mr. Crawford was unjustly enriched by

receiving benefits over the course of his relationship with Ms. Murray, including for example, Ms. Murray's agreement, at Mr. Crawford's request, to leave permanent outside employment to be his full time companion and manage his personal business. Ms. Murray also claims that Mr. Crawford received benefits, at Ms. Murray's detriment, after their romantic relationship ended, including Ms. Murray's negotiation of, and agreement to, the terms of a settlement of Mr. Crawford's obligations under the Cohabitation Agreement. Ms. Murray claims that it would be unjust for Mr. Crawford to retain the benefits that he received from Ms. Murray during and after their relationship because Mr. Crawford requested Ms. Murray's full-time devotion to his companionship and affairs, and guaranteed to Ms. Murray that he would adequately compensate and financially support her, both during and after their relationship.

The defendant, Mr. Crawford, admits that he became financially responsible for Ms. Murray in early 2002. He admits that he and Ms. Murray entered into a written Cohabitation Agreement in September 2005. He admits that he ended the parties' relationship in 2007. Mr. Crawford admits that Ms. Murray fully performed her duties under the Cohabitation Agreement up until the time when the Cohabitation Agreement was terminated. He admits that he accepted all the benefits incurred by Ms. Murray's performance of her contractual duties under the Cohabitation Agreement and that he knew he was required to fulfill the contractual duties he owed to Ms. Murray under that agreement. Mr. Crawford admits that he sent Ms. Murray a proposed Termination and Release Agreement containing an offer to settle. He admits that Ms. Murray signed the Termination and Release Agreement. Mr. Crawford also admits that he has not made any payments to Ms. Murray pursuant to the Termination and Release Agreement.

Defendant denies that he and the Plaintiff entered into a binding and enforceable contract that changed Defendant's obligations under the Cohabitation Agreement.

Defendant contends that his payment obligation to Plaintiff is defined by the Cohabitation Agreement.

Defendant contends that the Cohabitation Agreement prohibits the parties from changing that payment obligation unless the change is set forth in a written document that has been signed by both parties. Defendant contends that the Cohabitation Agreement prohibits the parties from using an oral agreement to change the payment obligation that was established by the Cohabitation Agreement.

Defendant denies that he entered into an oral agreement with Plaintiff in July 2007. Defendant contends that in July 2007 he told Plaintiff he would prepare a written proposal that addressed the parties' disagreement over the amount of Defendant's payment obligation.

Defendant contends that in August 2007 the parties decided that the written proposal should include a provision for payment of $278,000 to Plaintiff.

Defendant sent a draft written proposal to Plaintiff in September 2007.

In October 2007, Plaintiff sent an e-mail saying that she could not sign the draft written proposal "as is."

Defendant contends that Plaintiff's statement was a rejection of the draft written proposal.

Defendant contends that the parties had a discussion about the terms of the draft written proposal in November 2007, and that during this discussion Plaintiff said she wanted to add new provisions to the draft written proposal. Defendant asserts that he rejected Plaintiff's proposed changes and told her that the negotiations were over. Defendant contends that Plaintiff's proposal to add new terms to the draft written agreement constituted a counter-offer and a rejection of the draft written agreement.

Defendant asserts that he did not hear back from Plaintiff during the rest of November, or in December, or in January.

Defendant asserts that in February 2008 Plaintiff's attorney sent him an e-mail saying he wanted to propose certain changes to the draft written proposal. Defendant rejected this suggestion.

Defendant asserts that Plaintiff's attorney contacted him again in June 2008, and that Defendant told him again that he was not interested in discussing any changes.

In July 2008 Plaintiff's attorney sent Defendant a copy of the draft written proposal that Plaintiff had signed. Defendant asserts that the copy of the document he received did not contain the signature of Plaintiff's attorney.

Defendant contends that the draft written proposal did not become an enforceable contract because it was not signed by Plaintiff' attorney.

Defendant contends that the draft written proposal did not become an enforceable contract because Defendant chose not to sign it.

Defendant contends that nine-month period between the date on which he sent Plaintiff the draft written agreement and the date on which Plaintiff signed the document was an unreasonably long delay and that a reasonable person could not have believed the offer was still open for acceptance after the nine-month delay.

Defendant contends that Plaintiff's claim for unjust enrichment is barred by the terms of the Cohabitation Agreement.

Defendant contends that Plaintiff's claim of promissory estoppel is barred by the terms of the Cohabitation Agreement, and also because Plaintiff did not reasonably and detrimentally rely on a promise made to her by Defendant.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on September 23, 2008. (Doc. No. 1.) Defendant filed a Motion to Dismiss on October 17, 2008. (Doc. No. 5.) On June 26, 2009, this Court entered its Order granting in part the Motion to Dismiss and dismissing with prejudice Plaintiff's Fifth Cause of Action. (Doc. No. 33.) Defendant filed his Motion for Partial Summary Judgment on August 31, 2009. (Doc. No. 36.) On September 2, 2009, Plaintiff file an Unopposed Motion to Dismiss Certain Claims Without Prejudice. (Doc. No. 38.) On September 3, 2009, this Court granted Plaintiff's Motion to Dismiss Certain Claims, dismissing Plaintiff's First Claim for Relief without prejudice. (Doc. No. 39.) On February 12, 2010, this Court entered its Order denying Defendant's Motion for Partial Summary Judgment. (Doc. No. 57.)

## TRIAL AND JURY VERDICT

The Court held a jury trial from May 24, 2010, through May 27, 2010. On May 27, 2010, the Court read the instructions to the jury. The jury deliberated for less than one day and returned a verdict on May 27, 2010, in favor of Defendant.

## LEGAL STANDARD

Fed. R. Civ. P. 50(b) "sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400 (2006). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Much like a Rule 50(a) motion, "[a] renewed motion for judgment as a

matter of law under Rule 50(b) . . . must state the grounds on which it was made." 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2537, at 604-05 (3d ed. 2008). The Court, in deciding a Rule 50(b) motion, may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). However, the Court is advised to grant such relief "only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir.1993).

The standard for ruling on a rule 50(b) motion is similar to that for ruling on a rule 50(a) motion—whether there was sufficient evidence upon which a reasonable jury could have arrived at the verdict that the jury returned. *See Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009)("A party is entitled to JMOL only if the court concludes that 'all of the evidence in the record . . . [reveals] no legally sufficient evidentiary basis for a claim under the controlling law.'")(quoting *Hysten v. Burlington N. Sante Fe Ry. Co.*, 530 F.3d 1260, 1269 (10th Cir. 2008)). "In ruling on such a motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it." Fed. R. Civ. P. 50(b) advisory committee's note. *See Hysten v. Burlington N. Sante Fe Ry. Co.*, 530 F.3d at 1269 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.' "). The Court, however, much like in ruling on a motion for summary judgment, must draw all reasonable inferences in favor of the non-moving party. *See Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d at 1244 ("[W]e . . . will reverse the district court's

denial of the motion for JMOL 'if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.'") (quoting *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004)); *Hysten v. Burlington N. Sante Fe Ry. Co.*, 530 F.3d at 1269. It is not the court's province to "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Id.*

## ANALYSIS

Plaintiff argues that she "demonstrated without question at trial . . . that the equities run in her favor, warranting judgment for Ms. Murray as a matter of law on her claims for promissory estoppel and unjust enrichment." (Mot. at 1.)

### A. *Promissory Estoppel*

Under Colorado law, the elements of a promissory estoppel claim are " '(1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.' " *Jones v. Denver Public Sch.*, 427 F.3d 1315, 1325 (10th Cir. 2005) (quoting *Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App.2003)). Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract. *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007). Plaintiff asserts she proved each one of these elements at trial, and that Defendant offered no legally sufficient evidence to rebut the claim, and therefore no reasonable juror could have found in Defendant's favor. (Mot. at 3.)

"[A] promise is 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *G & A Land, LLC v. City of Brighton*, — P.3d —, No. 08CA2192, 2010 WL 1710744, at *2 (Colo. App. Apr. 29, 2010) (quoting Restatement (Second) of Contracts § 2(1)). A promise may be stated in words either oral or written or may be inferred wholly or partly from conduct. *Id.* To be the basis for promissory estoppel, a promise must be "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. App.1998).

Plaintiff contends that "there can be no doubt as to whether [Defendant] made a promise to [Plaintiff] or what that promise was. The evidence presented at trial by [Plaintiff] . . . unequivocally demonstrates that [Defendant] promised to pay [Plaintiff] $278,000 and maintain a paid-up $1,250,000 life insurance policy for her benefit." (Mot. at 5.) Plaintiff argues that after Defendant's request for a financial settlement proposal from Plaintiff, the parties agreed upon a settlement amount. (*Id.* at 4.) On June 30, 2007, Defendant confirmed their agreement to writing, stating, "I will commence the construction of the agreement Wednesday . . . then you and yours can look at if for final agreement." (*Id.* [citing Stip. Ex. J-9].) On August 31, 2007, Defendant wrote to Plaintiff that he had "secured the $278,000 that we have agreed to that would be my payment-gift to you to permanently resolve our concern." (*Id.* [citing Stip. Ex. J-10].) Plaintiff argues it is significant that Defendant informed Plaintiff that the $278,000 "is ready to be transferred to you once you sign the release form." (*Id.* [citing Stip. Ex. J-10].) Plaintiff also argues that the Termination and Release Agreement "states with certainty that [Defendant], in

8

order to settle all of his duties and obligations to [Plaintiff] under the Cohabitation Agreement, would pay [Plaintiff] $278,000 and maintain a paid-up life insurance policy valued at $1,250,000 for her benefit." (*Id.* [citing Stip. Ex. J-12].) Plaintiff also argues that the email correspondence and Termination Agreement "clearly invited [Plaintiff] to rely" on Defendant's promise. (*Id.* at 7.) Plaintiff argues that Defendant did not introduce any evidence to rebut the existence of his promise to settle or to rebut that he did expect Plaintiff to rely on his promise at the time it was made. (*Id.* at 5, 7.) Finally, Plaintiff argues she did reasonably rely on Defendant's promise by commencing the process and going to the expense of finding an attorney to review the proposed Termination Agreement and by "vindicating her rights under the Cohabitation Agreement." (*Id.* at 9.)

Defendant argues that he "testified at trial that he made clear in all his communications with Plaintiff that any payment of $278,000 was contingent on the parties reaching an enforceable agreement under the written Termination Agreement." (Resp. at 4.) As such, Defendant argues, "the jury could find that Defendant's communications with Plaintiff about the payment of $278,000 did not constitute a formal commitment to make the payment if the parties failed to accept the Termination Agreement in the proper manner." (*Id.*) The Court agrees. At trial, Defendant testified that he and Plaintiff had tentatively agreed he would pay Plaintiff $278,000, but that health insurance, life insurance, and tax matters still needed to be resolved, and that the Termination Agreement was not "official" until these matters were resolved and both parties had signed the Termination Agreement. Defendant also testified that, though he sent Plaintiff a draft termination agreement on September 25, 2007, Plaintiff did not respond to him

until October 11, 2007, when she advised she cold not sign the agreement as it was proposed. Defendant also testified that, during a telephone conversation with Plaintiff in November 2007, he advised her the proposal was "off the table." The Court finds this testimony to be sufficient evidence upon which a reasonable jury could have arrived at a conclusion that Defendant did not make an enforceable promise to Plaintiff. Moreover, the evidence could lead a reasonable jury to conclude that Defendant would not reasonably have expected that Plaintiff would rely on the promise and to conclude that Plaintiff did not rely to her detriment on Defendant's acts or representations. As such, justice does not require that the alleged promise be enforced, and Plaintiff's Rule 50(b) motion regarding her promissory estoppel claim is denied.

### B. *Unjust Enrichment*

Under Colorado law, to establish a claim of unjust enrichment a plaintiff must show that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-120 (Colo. 1998). Unjust enrichment is "a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000). "The concept of unjust enrichment centers attention on the prevention of injustice." *Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 795 (Colo. 1991) (internal quotation marks omitted).

Plaintiff argues the evidence at trial demonstrated that Plaintiff, at her expense, conferred a benefit on Defendant. (Mot. at 13.) Plaintiff first asserts that she conferred a benefit on Defendant by agreeing to settle all claims she may have had against him in exchange for

10

$278,000. (*Id.*) Plaintiff argues that Defendant "benefitted by disposing of that $278,000 as he wished without paying it to [Plaintiff]." (*Id.*) Plaintiff also asserts she, through her "tolerance of" Defendant's nonpayment, conferred a number of other benefits on Defendant. (*Id.*) Plaintiff argues Defendant benefitted from the time value of the money he retained instead of paying Plaintiff money owed under the Cohabitation Agreement. (*Id.*) Plaintiff also states that Plaintiff benefitted from his failure to pay Plaintiff the $278,000 agreed upon to terminate the Cohabitation Agreement. (*Id.*) Plaintiff further argues Defendant benefitted by not having to employ legal counsel or to defend suit on Plaintiff's claims under the Cohabitation Agreement until September 2008. (*Id.*) Finally, Plaintiff contends Defendant avoided any obligation to cover Plaintiff's substantial legal fees under the fee-shifting provision in the Cohabitation Agreement since she withheld any legal claims until September 2008 and then dismissed her claims under the Cohabitation Agreement without prejudice. (*Id.* at 13–14.) Plaintiff asserts any reasonable juror would conclude that these benefits were received by Defendant at Plaintiff's expense, thereby establishing the first two prongs required for her unjust enrichment claim. (*Id.* at 14.)

      Jury Instruction 48 read to the jury stated:

> In general, a party cannot recover for unjust enrichment when an enforceable express contract covers the same subject matter. There are two exceptions to this general rule.
>     A party can recover on a claim of unjust enrichment when that claim relates to conduct outside the matters covered by an express contract or to events arising subsequent to the express contract.
>     A party can recover on a claim of unjust enrichment when that party will have no right under an enforceable contract, such as when an express contract fails or is rescinded.

Defendant argues that the parties' negotiations concerning payment of $278,000 covered the same subject matter as that which was addressed in the Cohabitation Agreement. (Resp. At 6.) Plaintiff argues that Defendant's receipt of the benefits of nonpayment, a release of Plaintiff's claim, and Plaintiff's forbearance on her right to prosecute her claims against Defendant are a completely different subject matter than that addressed by the Cohabitation Agreement. (Reply at 7–8.) However, Defendant testified that his obligation to make payments to Plaintiff at the end of their relationship was governed by the Cohabitation Agreement. The Court finds the testimony and evidence presented may have led a reasonable jury to conclude that the conduct of the parties was continuing and that it covered the same subject matter as the Cohabitation Agreement.

    Defendant also argues that the jury was entitled to reject Plaintiff's unjust enrichment claim on the ground that Plaintiff did not confer a benefit on Defendant by "tolerating" his nonpayment of the $278,000 and his noncompliance with the payment requirements set forth under the Cohabitation Agreement. Defendant asserts that "tolerating" nonpayment of these amounts would constitute conferral of a benefit only if Plaintiff had a legally enforceable right to the payments. Defendant argues that the jury's lack of such findings of liability on the part of Defendant is fatal to Plaintiff's contention that "tolerating" nonpayment constituted conferring a benefit on Defendant at Plaintiff's expense. The Court agrees that a reasonable jury could have concluded that, just as it found Defendant did not breach the Termination Agreement, that Plaintiff did not confer a benefit on Defendant by "tolerating" his failure to pay under the contract. Likewise, a reasonable jury could have concluded that Plaintiff did not confer a benefit

on Defendant by "tolerating" his failure to pay under the Cohabitation Agreement because of her testimony that she voluntarily dismissed her claims related to that contract.

Plaintiff also argues that Defendant's retention of the benefits he received would be unjust, thus establishing the third prong of her unjust enrichment claim. (*Id.*) In support of this argument, Plaintiff discusses *Lewis v. Lewis*, 189 P.3d 1134 (Colo. 2008), in which the Colorado Supreme Court addressed the third prong in "the difficult but not altogether uncommon circumstance of a failed gift or failed contract between close family members or confidants, resulting in a claim of unjust enrichment." 189 P.3d at 1142 (citing cases). The *Lewis* Court held that in these circumstances, "the parties' actions expressing mutual purpose should govern the third prong of unjust enrichment." *Id.* at 1143. "[W]hen close family members or confidants act with a mutual purpose, unjust enrichment occurs when one party benefits from an action that is a significant deviation from that mutual purpose." *Id.* The *Lewis* Court concluded:

> Courts considering the third prong of an unjust enrichment claim arising from a confidential relationship should look to the factual support establishing the mutuality of purpose of both the giving and receiving parties. This includes a determination by the trial court of whether both parties' actions indicate that each party possessed the same or similar purpose. In particular, the trial court should consider whether either party acted in furtherance of or detrimentally relied on the gift or agreement. Finally, the court should consider the length of time that the parties acted in furtherance of this misunderstanding. In the event that the parties intended the same outcome or the parties' mutual purpose is easily discernable, the trial court should seek by its equity determination to fulfill this failed mutual purpose when one party benefits from acting in significant deviation with this mutual purpose.

*Id.*

Defendant argues Plaintiff is foreclosed from making the argument that the parties were engaged in a confidential relationship with a mutual purpose because she did not raise this argument when she moved for a directed verdict at the close of evidence. (Resp. at 5 [citing *Kaiser v. Bowlen*, 455 F.3d 1197, 1203 (10th Cir. 2006)].) Indeed, a prerequisite to a Rule 50(b) motion, and one implicit in its nature as a renewed motion for judgment as a matter of law, is that the moving party has made a Rule 50(a) motion for judgment as a matter of law during trial, and that the party raised in the Rule 50(a) motion all issues it seeks to raise in the subsequent Rule 50(b) motion. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009)(moving party did not assert arguments in its Rule 50(a) motion at the close of opponent's case-in-chief, and was thus precluded from relying on them as a basis for Rule 50(b) relief); *Marshall v. Columbia Lea Regional Hosp.*, 474 F.3d 733, 738 (10th Cir. 2007)(raising a particular defense in a "pre-verdict Rule 50(a) motion . . . is a prerequisite to a post-verdict motion under Rule 50(b)."); *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1229 (10th Cir. 2000)("[M]erely moving for directed verdict is not sufficient to preserve any and all issues that could have been, but were not raised in the directed verdict motion."); *First Sec. Bank of Beaver v. Taylor*, 964 F.2d at 1057 ("[A] party is precluded from relying upon grounds in a [Rule 50(b) ] motion for judgment notwithstanding the verdict that were not previously raised in support of the [Rule 50(a) ] motion for a directed verdict.")(citing *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1455 n.2 (10th Cir. 1987)).

In *United Int'l Holdings, Inc. V. Wharf (Holdings) Ltd.*, 210 F. 3d 1207 (10th Cir. 2000), the Tenth Circuit stated that "[i]n considering whether the grounds of a motion for directed

verdict were stated with sufficient specificity, we liberally construe Rule 50 in light of its purpose to secure a just, speedy, and inexpensive determination of a case." 210 F.3d at 1228 (internal quotation marks omitted). The Circuit noted that "[a] rigid application of the rule is in order only if such application serves either of the rule's rationales—protecting the right to trial by jury or ensuring an opposing party has sufficient notice of an alleged error so that it may be cured before the party rests its case." *Id.* at 1228–29.

In her Reply, Plaintiff argues that her Rule 50(a) motion was legally sufficient and apprised Defendant that she was seeking a directed verdict on each of her claims based on the sufficiency of the evidence presented by Defendant to support his defenses. (Reply at 9.) Plaintiff asserts that Defendant had no right under the Seventh Amendment to a jury trial on Plaintiff's equitable claims. (*Id.* [citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40–41 (1989)].) Therefore, Plaintiff argues, Defendant's Seventh Amendment rights were not affected by the purported lack of specificity. (*Id.*) The Court finds the latter rationale behind Rule 50 is more relevant to this case.

Plaintiff's Rule 50(a) motion made at the close of her evidence was very brief and broad—that the evidence had established a contract that was accepted in accordance with its terms and that the contract has not been paid. Similarly, Plaintiff's Rule 50(a) very brief and broad motion made at the close of all evidence was that the evidence had established a contract that was accepted in accordance with its terms and that there was an admitted failure to pay under the terms of the contract. Plaintiff argues that Defendant "never denied, nor could he, the fact that he and [Plaintiff] engaged in a lengthy, quasi-marital relationship, constituting the type

15

of close relationship identified in *Lewis*." However, the Court finds Plaintiffs Rule 50(a) motions did not apprise the Court or the defendant of the present theory regarding a close relationship and mutual purpose. This theory also was not presented in the form of a pretrial submitted jury instruction. Indeed, if Defendant had been apprised of this theory, he may have presented testimony and evidence that he and Plaintiff were not engaged in a confidential relationship with a mutual purpose. As a result, Rule 50's purpose of allowing the opposing party to correct the identified deficiencies would be seriously undermined by allowing Plaintiff to make this challenge at this point. Therefore, in light of the foregoing, Plaintiff's Rule 50(b) motion related to her unjust enrichment claim is denied.

WHEREFORE, it is ORDERED:

1. Plaintiff's "Renewed Motion for Judgment as a Matter of Law"(Doc. No. 94) is DENIED. Defendant may have his costs by filing a bill of costs pursuant to Local Rule 54.1; and

2. The Clerk of Court shall enter judgment in favor of Defendant on all of Plaintiff's claims pursuant to the jury verdict reached on May 27, 2010.

Dated this 24th day of September, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge